**In re Helen L. ROBERTS, Debtor.**

**Bankruptcy No. 87–70650.**

United States Bankruptcy Court,
C.D. Illinois.

Aug. 24, 1987.

Carl O. Hoffee, Springfield, Ill., for debtor.

James L. Palmer, Quincy, Ill., trustee.

Thomas W. Dye, Macomb, Ill., for Citizens Nat. Bank.

OPINION

LARRY LESSEN, Chief Judge.

The issue before the Court is whether estate taxes, payable as a result of the death of the Debtor's mother in 1980, are debts that arose out of a farming operation for purposes of 11 U.S.C. Sec. 101(17)(A).

The Debtor filed a petition in bankruptcy pursuant to Chapter 12 of the Bankruptcy Code on April 15, 1987. She has been the sole operator of two farms in Schuyler County, Illinois, since the death of her mother on June 13, 1980. Previously, she assisted her mother in the operation of the farms.

On May 21, 1987, Citizens National Bank filed a motion to dismiss. Citizens argues that the Debtor is not eligible for Chapter 12 relief because she has not met the "debt test" imposed under Chapter 12. The Debtor's schedules list a total indebtedness of $245,404.18. Of that sum, $90,091.91 represents Federal Estate Taxes, $17,-456.72 represents Illinois Inheritance Taxes, and $6,666.66 represents attorney's fees. Citizens argues that only 53.46% of the Debtor's total debt arises out of the farming operation since $114,215.29 of the total $245,404.18 debt was incurred as a result of the death of the Debtor's mother. Thus, Citizens argues that the Debtor does not meet the 80% requirement of Section 101(17)(A). The Debtor responds that the taxes and fees are farm-related debts within the context of a Chapter 12 proceeding because they were incurred in the acquisition of the farming operation.

"Only a family farmer with regular income may be a debtor under Chapter 12 ..." 11 U.S.C. Sec. 109(f).

A "family farmer" includes an:

individual ... engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose ... debts ... arise out of a farming operation owned or operated by such individual ... and such individual ... receive[s] from such farming operation more than 50 percent of such individual's ... gross income for the taxable year preceding the taxable year in

which the case concerning such individual ... was filed ...

11 U.S.C. Sec. 101(17).

Farming operation "includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." 11 U.S.C. Sec. 101(20).

The starting point for the Court's analysis is *Matter of Armstrong*, 812 F.2d 1024 (7th Cir.1987). The primary issue in *Armstrong* was whether the debtor was a farmer and therefore immune from involuntary bankruptcy under 11 U.S.C. 303(a). In resolving this issue, the Court advanced a "pragmatic viewpoint" in interpreting the meaning of "farming operation." 812 F.2d at 1026. In holding that the income generated from the sale of farm machinery was income from a "farming operation", the Court stated:

> ... Armstrong's farm machinery was inescapably interwoven with his farming operation. Importantly, it is undisputed Armstrong was never in the business of buying, selling, or trading such machinery. The machinery was purchased to work the acreage that represented Armstrong's farming operation. Had the farm prospered, the machinery would have stayed in Armstrong's possession. He bought the machinery so the farm could exist and prosper. But for the machinery, there would be no farm.... [Section 101(20)] does not provide a simply all-inclusive list of tasks and activities (i.e., tillage of the soil, dairy farming) Instead, the section starts out in general terms—'Farming operation includes *farming*, tillage of the soil, dairy farming ...' (emphasis added). Implicit in this definition is the inclusion of general activities inherent in farming and, we believe, the means (or in this case, the equipment) necessary to perpetuate the farming operation the definition speaks of. When a farmer sells some of his machinery in an effort to scale down his operation (say from 200–100 acres) and save his farm, the money received is

inescapably from the 50% of the farming operation dissolved.

812 F.2d at 1026. The Court further held that when a farmer receives cash rent, up front, for leasing real property, this income is not subject to any of the inherent risks associated with farming, and is considered non-farm income. 812 F.2d 1027–28.

The debts in question in the instant case arose when the Debtor inherited the farm from her mother. The estate taxes have to be paid in order for the Debtor to keep the farm. But for the payment of the estate taxes, there would be no farm. The payment of estate taxes is clearly "inescapably interwoven" with the farming operation.

There is no question that mortgage payments on a farm are farm-related debts. Similarly, the payment of tax liens on a farm should be farm-related debts. Both obligations are incurred as the result of the acquisition of a farming operation. It does not make any difference that the mortgage obligation arises from the purchase of the farm, and the tax obligation arises from the inheritance of the farm. Both are debts arising out of a farming operation.

The Court's conclusion is supported by the recent case of *Matter of Rinker*, 75 B.R. 65 (Bankr.S.D.Iowa 1987). The issue in *Rinker* was whether a debt that arose out of a settlement of a will dispute was a debt that arose out of a farming operation. Citing *Armstrong, supra*, the Court stated that a "searching inquiry" of the questioned activity and its relation to farming was required. 75 B.R. at 68. In finding that the will settlement was a farm related debt, the Court stated:

> At the heart of the lawsuit and resultant settlement was the land ... It was the land over which the litigants fought and it was the land that was the subject of the settlement. Land is also the sine qua non of a crop production enterprise. Tillage of the land fits precisely into the definition of "farming operation" under Sections 101(20). It is undisputed that the ... [debtor's] purpose in settling the case was to preserve their farming operation. Without the land, the ... [debtors] would have no farm. It is this direct

link between the basis of the lawsuit and settlement and the farming activity that leads this court to conclude that the debts in question arose out of a "farming operation." The mere fact that a debt arises from a settlement of a lawsuit does not mean the requirements of Section 101(20) cannot be met. 75 B.R. at 68. The Court further stated, "[W]hether it be in the context of a sale, a lawsuit, a settlement of a lawsuit, or the effectuation of a will, the focus of the inquiry is on the subject matter of the proceeding in question. To the extent a debt arises out of such a proceeding and the subject matter of the proceeding falls within the definition of farming operation under Sec. 101(20), the Sec. 101(17)(A) criterion will have been satisfied." 75 B.R. at 68.

In the case at bar, the Bank has pointed solely to the fact that the debts in question resulted from the death of the Debtor's mother. However, the "searching inquiry" mandated by *Armstrong* and described in *Rinker* makes it clear that the debts are farm related debts. It was the land that the Debtor inherited from her mother, and it is this land that is the heart of the Debtor's farming operation. The purpose of paying the tax obligations is to preserve the land. Without the land, the Debtor would not have a farming operation. Clearly, there is a direct link between the estate taxes and the farming activity. Therefore, the debts in question arose out of a "farming operation".

For the foregoing reasons, the Court finds that the debts which resulted from the death of the Debtor's mother arise out of a farming operation for purposes of 11 U.S.C. Sections 101(17)(A) and 101(20). Accordingly, the Motion to Dismiss is DENIED.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.