**In re Eugene REAK, Debtor.**

**Bankruptcy No. 88–01792.**

United States Bankruptcy Court,
E.D. Wisconsin.

Sept. 30, 1988.

Jeffrey P. White, Chicago, Ill., for debtor.

Thomas A. Schuessler, Beaver Dam, Wis., for Mary Jean Reak.

Thomas J. King, Oshkosh, Wis., trustee.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Mary Jean Reak, former wife of the debtor, has filed a motion to dismiss the debtor's chapter 12 petition on the basis that the debtor is ineligible for chapter 12 relief. Mrs. Reak contends that the debtor is not a family farmer because he is unable to meet the 80% farm debt criteria set forth in 11 U.S.C. § 101(17)(A).[1] She maintains that there is a debt owing to her from the debtor pursuant to a divorce decree directing the debtor to make the land contract payments to the Estate of Adeline Warmka ("land contract vendor"), which did not arise out of the farming operation. If Mrs. Reak is correct, because the balance due under the land contract exceeds $363,000, the debtor cannot meet the 80% farm debt requirement.

The debtor submits the following two arguments in response:

---

**1.** 11 U.S.C. § 101(17)(A) provides:

(17) "family farmer" means—

   (A) individual or individual and spouse engaged in a farming operation ... not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual ... unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation

.    .    .    .    .

1. There is no debt from the debtor to Mrs. Reak; and

2. Even if there is a debt, it is "farm related."

■ The key inquiry deals with that portion of the divorce judgment under which the debtor assumed full responsibility for the joint obligation from the debtor and Mrs. Reak, as land contract vendees, to the land contract vendor. Under the divorce judgment, the debtor:

> "... is responsible for all the liabilities ... which specifically includes the current land contract payment to Mrs. Adeline Warmka in the sum of $364,445.39 upon the terms and conditions contained within said land contract."

On April 2, 1979, both the debtor and Mrs. Reak, then husband and wife, signed a land contract as land contract vendees with Andrew and Adeline Warmka, parents of Mrs. Reak, as land contract vendors.[2] The divorce judgment did not replace this debt created under the land contract. That is clear from the following language contained in the divorce judgment:

> "The petitioner realizes that this mortgage is not a reflection of additional debt between the parties. This mortgage is in no way intended to, nor shall it, change the terms of the underlying land contract payable by the respondent to Adeline Warmka."

The divorce judgment merely altered the relationship between the debtor and Mrs. Reak by requiring the debtor to assume full responsibility for future land contract payments. It created a contingent liability from the debtor to Mrs. Reak in the event the debtor defaulted on the payments.

The court, therefore, rejects the debtor's initial argument of no debt from the debtor to Mrs. Reak. However, for purposes of the 80% farm debt requirement, the original joint obligation from both parties to the land contract vendor remained a noncontingent debt.

■ There is authority to support the debtor's second contention that the debt was farm related. In *In re Roberts*, 78 B.R. 536 (Bankr.C.D.Ill.1987), a creditor sought to dismiss a chapter 12 case, claiming that estate taxes due from the debtor did not constitute a debt arising out of a farm operation, and the debtor therefore could not meet the 80% farm debt requirement. The court rejected that argument declaring:

> "But for the payment of the estate taxes, there would be no farm. The payment of estate taxes is clearly 'inescapably interwoven' with the farming operation."

*Id.* at 537. In *In re Armstrong*, 812 F.2d 1024 (7th Cir.1987), the Seventh Circuit also concluded that a sale of the debtor's farm machinery was "inescapably interwoven with his farming operation." As a result, it was held that the money which the debtor received from that sale constituted farm income within the meaning of §§ 101(17) and (18) of the Code. In the same vein, in *Matter of Rinker*, 75 B.R. 65 (Bankr.S.D. Iowa 1987), an obligation arising out of a will settlement was held to be farm-related, thereby qualifying the debtor for chapter 12 relief. The court declared, 75 B.R. at 68:

> "At the heart of the lawsuit and resultant settlement was the land.... It was the land over which the litigants fought and it was the land that was the subject of the settlement. Land is also the *sine qua non* of a crop production enterprise.... Without the land, the Rinkers would have no farm. It is this direct link between the basis of the lawsuit and settlement and the farming activity that leads this court to conclude that the debts in question arise out of a 'farming operation'."

There is a common thread running throughout these decisions. In *Roberts*, the court asserted that "but for" the payment of the estate taxes, there would be no farm. In *Armstrong*, it was held that "but for" the farm machinery, there would be no farm. In *Rinker*, the court, applying

2. Both Andrew and Adeline Warmka are deceased, and the land contract vendor is now the Estate of Adeline Warmka.

similar reasoning, stated that "but for" the land, there would be no farm. Adopting this logic in the case at bar, "but for" the land acquired by the debtor and Mrs. Reak under the land contract in 1979 for farming, there would be no farm; and "but for" the land contract, there would be no hold harmless agreement in the divorce judgment.

The debts in *Roberts, Rinker* and the case at bar are all "inescapably interwoven" with farming operations. This differs from the example contained in dicta in *Rinker* and relied upon by Mrs. Reak of a mortgage given on a farm for the purpose of securing settlement payments resulting from a car accident. *Rinker* correctly stated that the facts under that example presented a debt unrelated to farming. The debt in *In re Van Fossan*, 82 B.R. 77 (Bankr.W.D.Ark.1987), is also dissimilar from the instant case because it involves a new debt created pursuant to a divorce settlement in order to provide an equalization of property rights between the parties. It is unnecessary to decide whether that presents a substantive distinction from the instant case; even if it is not, this court is persuaded to adopt the reasoning of *Armstrong, Roberts* and *Rinker*.

To interpret § 101(17)(A) in the manner requested by Mrs. Reak would be unduly restrictive. It would, under the facts herein involving a debtor who has been a farmer all of his life and who has been farming on this particular land since 1963, be contrary to the philosophy which led to the enactment of chapter 12. Anderson and Morris, *Chapter 12 Farm Reorganizations* § 2.10 (1988) at p. 2–48 states:

"... the legislative history points out that Chapter 12 'offers family farmers the important protection from creditors that bankruptcy provides.' Given the fact that ... chapter 12 embod(ies) the same spirit of relief for family farmers, and given the prior mandate of the Supreme Court in interpreting a comprehensive farmer bankruptcy reorganization statute, it would appear that any ambiguities in Chapter 12 and other provisions of the Bankruptcy Code which might appear to limit the eligibility of farmers for relief should be resolved liberally in the farmer's favor to provide such relief to as many family farmers as possible."

*See also, In re Tart*, 73 B.R. 78 (Bankr.E. D.N.C.1987), where Judge Small stated that chapter 12 must be interpreted reasonably and in a manner to give effect to the overall purposes of that legislation.

Based upon the foregoing, the 80% farm debt requirement has been met by the debtor, and he is a "family farmer" within the meaning of § 101(17)(A).

This court is, nevertheless, troubled by the potential consequences to Mrs. Reak if a chapter 12 confirmation occurs in this case. The secured portion of the land contract vendor's claim will be reduced to the value of the collateral, and to the extent that the unpaid balance under the land contract exceeds such value, the excess will be treated as an unsecured claim. Consequently, any balance under the land contract not paid by the debtor will be discharged against the debtor upon completion of the plan. However, that balance will remain Mrs. Reak's obligation. This would place her in jeopardy of having the land awarded to her in the divorce action, but subject to the land contract, foreclosed, since her ability to pay such balance is extremely dubious. Mrs. Reak, however, is not remediless. If the foregoing scenario occurs, she may seek a modification of the divorce judgment from the state court with respect to the debtor's obligations for maintenance and support. The divorce judgment provides that the state court may increase or decrease future support "depending upon the circumstances as they may exist as compared with the present circumstances." It also provides that the state court shall continue to retain jurisdiction over maintenance and support. Furthermore, in a recent Wisconsin Court of Appeals decision, *Eckert v. Eckert*, 144 Wis.2d 770, 424 N.W.2d 759 (1988), it was declared that the Wisconsin family court may modify a payor spouse's support obligations following the payor's discharge in bankruptcy.

Alternatively, the state divorce court may decide that the hold harmless provision is itself a form of support and maintenance, thereby making it a nondischargeable debt under § 523(a)(5). The state court has concurrent jurisdiction with the bankruptcy court to decide the issue of whether obligations are to be construed as a property settlement or as maintenance and/or support. Where the state court is more familiar with the facts and circumstances, the bankruptcy court should abstain, pursuant to 28 U.S.C. § 1334(c)(1) in order to promote comity between state and federal courts. In *In re White*, 851 F.2d 170 (6th Cir.1988), the court declared:

> "It is appropriate for bankruptcy courts to avoid invasions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters."

*Id.* at 173. In the past, this court has abstained under similar circumstances. *See, In re Nuetzel*, 82–00859 (Bankr.E.D. Wis. June 4, 1985).

In *In re Kincaid*, 55 B.R. 652 (Bankr.W. D.Ky.1985), Judge Deitz stated:

> "... we find it unnecessary to second guess the intentions of another court using such imprecise means as argument of counsel and rules of construction. The far better approach would be to lift the Section 362 automatic stay and allow the Daviess Circuit Court to clarify its own judgment. Such a treatment of the case will not only reveal the true meaning of the state court order as interpreted by its author, but will also tend to promote comity between federal and state courts in the area of domestic relations law, historically reserved to the state courts."

*Id.* at 653, 654.

Therefore, if a chapter 12 plan is confirmed,[3] Mrs. Reak may file with this court an application for relief from the automatic stay to allow her to return to the state court and seek a determination of whether the hold harmless agreement is a form of maintenance and/or support or, in the alternative, whether the state court should modify its judgment with respect to maintenance and support.

---

**3.** At this stage, it is uncertain whether a confirmation will occur because a separate dispute exists between the debtor and the land contract vendor on several major issues, including valuation of collateral, good faith filing, interest rate and amortization period.