**In the Matter of Arvon L. MARLATT, Debtor.**

**Bankruptcy No. BK89–41075.**

United States Bankruptcy Court,
D. Nebraska.

March 27, 1990.

Vincent M. Powers, Lincoln, Neb., for Arvon L. Marlatt, debtor.

W. Eric Wood, Omaha, Neb., Randy Alexander, Hastings, Neb., for Diana J. Marlatt.

Frank Schepers, Omaha, Neb., for City Nat. Bank and Trust.

Richard S. Reisner, Omaha, Neb., for John Deere Co.

Sandra L. Maass, Omaha, Neb., for Scoular Grain Co.

Richard L. Lydick, Omaha, Neb., Chapter 12 Trustee.

Patricia Dugan, Omaha, Neb., Asst. U.S. Trustee.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

THIS MATTER comes before the court on a Motion to Dismiss (Fil. # 6) filed by City National Bank and Trust of Hastings, Nebraska ("Bank"), a Joinder Motion to Dismiss (Fil. # 14) filed by Diana Marlatt, a Joinder Motion to Dismiss (Fil. # 19) filed by Scoular Grain Co., and a Motion to Dismiss (Fil. # 17) filed by the United States on behalf of the Internal Revenue Service ("IRS"). I conclude that the motions should be denied.

## FACTS

Debtor, Arvon L. Marlatt filed this Chapter 12 bankruptcy case on October 6, 1989. The instant Chapter 12 case, BK89–41075, was filed on the same day an order was entered dismissing debtor's previous Chapter 11 case, BK86–2993. Furthermore, this Chapter 12 case was filed three days before a scheduled sale of debtor's real estate. The motions to dismiss and joinder motions to dismiss were filed within a few weeks of debtor's Chapter 12 petition.

Prior to commencement of both the Chapter 11 and the Chapter 12 bankruptcy cases, the debtor, Arvon Marlatt was divorced from Diana Marlatt. The divorce decree provides that the debtor is to pay Ms. Marlatt the sum of $130,000.00, payable at $10,000.00 per year for thirteen (13) years. The decree specifically ordered that no interest was payable on the award. The decree also granted Ms. Marlatt a first lien on debtor's real estate to secure payments under the decree. The lien extended to all of debtor's real estate, including farm and non-farm property.

In the Bank's motion to dismiss, the Bank asserts that this case should be dismissed for three reasons. First, the Bank contends that the debtor is not eligible for Chapter 12 bankruptcy. The Bank contends that the debtor's obligation to his former spouse under the divorce decree is not a debt which arises out of a farming operation. The debt to the debtor's former spouse constitutes over 20 percent of the debtor's total debt. Thus, the Bank asserts that 80 percent of the debtor's total debt does not arise from a farming operation as required under 11 U.S.C. § 101(17)(A).

Second, the Bank asserts that this case should be dismissed because the filing of this case was improper under 11 U.S.C. § 109(g)(1) and (2). The Bank asserts that debtor's prior Chapter 11 case was dismissed after debtor's failure to obey orders of the court and after orders were entered granting the Bank and Scoular Grain Co. relief from the stay. Thus, the Bank asserts that the debtor was not eligible to file bankruptcy for 180 days after dismissal of the prior Chapter 11 case.

Third, the Bank asserts that the circumstances surrounding debtor's Chapter 12 filing indicate that this case is in the nature of a serial filing intended to frustrate the interests of creditors. The Bank states that this case was filed the same day as debtor's prior Chapter 11 case was dismissed and three days prior to a scheduled sale of debtor's property. Thus, the Bank contends that the debtor did not file this case in good faith.

The joinder motions to dismiss filed by Diana Marlatt and Scoular Grain Co. join the Bank's motion to dismiss. The motion to dismiss filed by the IRS is limited to the assertion that debtor's Chapter 12 case was filed improperly under § 109(g)(1) based on the debtor's failure to obey orders of the court in the previous Chapter 11 case.

## DISCUSSION

I conclude that the motions to dismiss and joinder motions to dismiss should be denied. The debtor, Arvon Marlatt is eligible for Chapter 12 bankruptcy.

■ First, for a debt to arise out of a farming operation, there must be a connection between the debt and the debtor's farming activity. *See Otoe County Nat'l Bank v. Easton (In re Easton)*, 883 F.2d 630, 636 (8th Cir.1989). *See also Matter of Armstrong*, 812 F.2d 1024, 1026 (7th Cir. 1987); *Matter of Rinker*, 75 B.R. 65, 68 (Bkrtcy.S.D.Ia.1987); *In re Reak*, 92 B.R. 804, 806 (Bkrtcy.E.D.Wis.1988). Under § 101(17)(A), an individual is eligible for Chapter 12 relief if, *inter alia*, not less than 80 percent of the individual's debt arises out of a farming operation. On the facts of this case, the $130,000.00 debt to the debtor's former spouse constitutes greater than 20 percent of the debtor's total debt. Therefore, if the $130,000.00 debt does not arise from debtor's farming operation, then less than 80 percent of debtor's total debt arises from a farming operation and the debtor would not be eligible for Chapter 12 relief. Alternatively, if the $130,000.00 debt arises from debtor's farming operation, then at least 80 percent of debtor's total debt arises from debtor's farming operation and the debtor may be eligible for Chapter 12 relief.

■ I conclude that the $130,000.00 debt from the debtor to his former spouse as set forth in the divorce decree arises from and is directly related to the debtor's farming operation. To determine if a particular debt arises out of a farming operation, the court should examine the substance of the underlying transaction. Under the divorce decree, the debtor is awarded all real estate and all farm machinery, equipment, crops

and livestock. The debtor is required to pay to his former spouse $130,000.00 and give his former spouse a first lien on the real estate to secure such payment. The real estate and farm machinery constituted the greater portion of the marital estate. In examining the underlying purpose of the $130,000.00 debt, I conclude that the debt was part of a division of farm property between the debtor and his spouse. The underlying purpose of the debtor's payment to his former spouse was to allow the debtor to retain the farming operation. Such a division of property is within the scope of and "inescapably interwoven" with the farming operation. *See Matter of Armstrong*, 812 F.2d at 1026. *See also, Easton*, 883 F.2d at 636; *Matter of Rinker*, 75 B.R. at 68. Therefore, I conclude that the $130,000.00 debt to debtor's former spouse arises out of the debtor's farming operation.

The Bank cites the holding in *In re Van Fossan*, 82 B.R. 77 (Bkrtcy.W.D.Ark.1987) as effectively controlling the result in this case. The court in *In re Van Fossan* held that a new debt created pursuant to a divorce settlement in order to provide equalization of property rights between parties does not arise out of a farming operation. The *Van Fossan* court reasoned that such debt was not incurred as a result of risks or activities relating to a farming operation. *See In re Van Fossan*, 82 B.R. at 79.

I conclude that *In re Van Fossan* does not control the result herein for several reasons. First, in holding that a debt created pursuant to a divorce settlement does not arise from a farming operation, the *Van Fossan* court relied on what has been referred to as the "risk test." *See Matter of Armstrong*, 812 F.2d at 1028. The Eighth Circuit Court of Appeals has rejected the risk test. Instead, the eighth circuit requires courts "to identify those farming activities engaged in or owned or operated by someone claiming 'family farmer' status" and then determine whether the debt at issue arises out of those activities. *See Easton*, 883 F.2d at 633. The holding in *Easton* was in the context of determining whether 50 percent of debtor's income

arose out of a farming operation. However, I conclude that the reasoning would apply equally to determining whether 80 percent of the farmer's debt arose from a farming operation. Under the test announced by the eighth circuit, I conclude that the debtor was engaged in a farming operation and that the $130,000.00 debt to the debtor's former spouse arose in the context of and directly from that farming operation. Second, in *In re Rinker*, a case similar to the instant case, the court held that a debt incurred by debtors in settlement of a will dispute over land farmed by debtors was a debt arising out of a farming operation. The analysis of *In re Rinker* applies to the instant case and the eighth circuit has cited *In re Rinker* with approval. *See Easton*, 883 F.2d at 636 (citing *In re Rinker*, 75 B.R. at 68 with approval). Third, the holding in *In re Van Fossan*, is not necessarily inconsistent with the holding in this case. The court in *In re Van Fossan* made a determination after "examining the underlying circumstances of the debt." However, the court in *In re Van Fossan* did not disclose or elaborate on the nature of the "underlying circumstances." *In re Van Fossan*, 82 B.R. at 80. Therefore, I conclude that under the eighth circuit's decision in *Easton*, the $130,000.00 debt to debtor's former spouse arises out of debtor's farming operation.

■ Assuming *arguendo* that the debtor's $130,000.00 debt did not arise from debtor's farming operation, the debtor would nevertheless be eligible for Chapter 12 relief because the court must take into account the fact that the $130,000.00 debt is to be paid over thirteen (13) years with no interest. The eligibility test under § 101(17)(A) should be applied in a uniform and consistent manner. Under § 101(17)(A), the court should compare all of debtor's obligations on a comparable basis. The $130,000.00 debt to the debtor's former spouse is not comparable to the debtor's other debts because no interest is to be paid on the $130,000.00 debt. The fact that no interest is to be paid on the $130,000.00 debt is a factor the court should consider in applying the 80 percent

test under § 101(17)(A). Although it is certainly not appropriate to reduce all interest-bearing debts to present value to account for the impact of the divergent interest rates, an adjustment is required in this case because the non-interest bearing obligation is substantial and it is to be paid over an extended period of time. In applying the § 101(17)(A) eligibility standard, the $130,-000.00 debt should be adjusted so this debt is not artificially inflated in comparison to the debtor's other debts. Parties have stipulated that if the present value of the $130,000.00 debt were used then not less than 80 percent of debtor's total debt would arise out of a farming operation and the debtor would meet the eligibility test under § 101(17)(A). I conclude that it is appropriate to use the present value of the $130,000.00 debt on the facts of this case. Thus, based on the stipulation of the parties in light of debtor's other debts, I conclude that the debtor satisfies the eligibility test of § 101(17)(A).

■ Second, I conclude that it is not appropriate to dismiss this case on the basis that it was improperly filed under § 109(g)(1) and (2). Under § 109(g)(1) and (2), a debtor may not file a bankruptcy case for 180 days after a prior case was dismissed if the prior case was dismissed either by the court for debtor's willful failure to obey court orders, or upon request of the debtor following the filing of a request for relief from the automatic stay. The debtor in the instant case is not prohibited from filing this case by either § 109(g)(1) or (2). In the order dismissing debtor's prior Chapter 11 case, the court did not specifically find that the debtor willfully failed to obey an order of the court. The instant case is a separate bankruptcy case from debtor's prior Chapter 11. Under the facts of this case, it is not appropriate to make a finding respecting debtor's willfulness in the prior case. Furthermore, although motions for relief were filed in debtor's prior Chapter 11 case, the motions were granted before the case was dismissed and the case was not dismissed upon a request of the debtor. Rather, debtor's prior Chapter 11 case was dismissed upon a motion to dismiss filed by a

creditor. Therefore, I conclude that § 109(g)(1) and (2) do not bar the filing of the instant case.

■ Third, I conclude that the instant case is not in the nature of an abusive filing intended to frustrate the interests of creditors. Multiple filings are not *per se* bad faith. *See Matter of Metz*, 820 F.2d 1495, 1497 (9th Cir.1987). Furthermore, I have previously concluded that the filing of this case is not barred by § 109. When a case is not barred by § 109, a creditor bears a heavy burden to prevail on a motion to dismiss based on bad faith or multiple filings. *See In re Samuel*, 77 B.R. 520, 523 (Bkrtcy.E.D.Pa.1987). *See also* § 349(a); § 1208(c); *In re Bigalk*, 813 F.2d 189 (8th Cir.1987). I conclude that the burden has not been met in this case. The debtor has not filed repeated bankruptcy petitions for the sole purpose of frustrating creditors or delaying foreclosure proceedings, and there has been no showing of egregious conduct on the part of the debtor. *See Little Creek Development Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068, 1072–73 (5th Cir.1986); *In re Kinney*, 51 B.R. 840 (Bkrtcy.C.D.Cal.1985) (debtors filed ten cases within two years); *In re Jones*, 41 B.R. 263 (Bkrtcy.C.D.Cal.1984) (debtors filed six cases within two years). Therefore, I conclude that dismissal of this case is not appropriate based on a serial or abusive filing.

Based on the reasons set forth, I conclude that the motions to dismiss and joinder motions to dismiss should be and are hereby denied.