# IN RE the MARRIAGE OF Rita M. ECKERT, Petitioner-Respondent,

## v.

## Dennis W. ECKERT, Appellant.†

Court of Appeals

*No. 87–0804. Submitted on briefs March 23, 1988.—Decided April 28, 1988.*

(Also reported in 424 N.W.2d 759.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

For the appellant the cause was submitted on the brief of *Richard B. Jacobson,* and *Borns, Macaulay & Jacobson,* of Madison.

For the petitioner-respondent the cause was submitted on the brief of *James E. Welker* and *David A. Schumann,* and *Brennan, Steil, Ryan, Basting & MacDougall, S.C.,* of Janesville.

Before Dykman, Eich and Sundby, JJ.

SUNDBY, J. Dennis Eckert appeals from an order extending the term of Rita's maintenance indefinitely. The family court entered the order on Rita's motion after Dennis obtained a discharge in bankruptcy of his property division obligations under the divorce judgment. Dennis claims that the family court abused its discretion in two respects. First, it "recreated" the property division in the guise of maintenance, contrary to the bankruptcy code and the

supremacy clause of the United States Constitution. Second, it found a change in Rita's financial circumstances because she failed to realize the gain anticipated from the sale of the homestead sufficient to pay her the amount ordered by the judgment to equalize the property division. We reject Dennis's claims and affirm.

## I.

## BACKGROUND OF THE CASE

Dennis and Rita were divorced in December, 1985. The judgment awarded Rita maintenance of $150 per week for eighteen months. To equalize the property division, Dennis was to pay Rita over $6,000 by June 1, 1986, or upon sale of the homestead, whichever occurred first. He was also to assume a credit card indebtedness of the parties in excess of $2,000 and make a substantial contribution to Rita's attorney fees. These debts were discharged in bankruptcy. Rita became liable for the debt on the credit card. She moved the court to increase maintenance and to extend it indefinitely. The trial court did not increase Rita's maintenance but extended it to an indefinite term.

## II.

## RE-CREATION OF PROPERTY DIVISION

The family court candidly acknowledged it exercised its discretion to extend Rita's maintenance because Dennis's discharge in bankruptcy had frustrated the objectives of the divorce judgment, which the court believed dealt equitably with both parties.

The court's action raises a state law question and a federal law question. The state law question is whether one party's discharge in bankruptcy of his or her property division obligation to the other spouse may constitute a change in financial circumstances of the parties which justifies the family court's exercise of its discretion under sec. 767.32(1), Stats., to modify the payee spouse's maintenance award. The federal law question is whether a state family court may, without major damage to the federal interests implicated, modify a maintenance award solely because the bankruptcy court has discharged the property division obligations of the payor spouse.

(a) *The State Law Question.*

A revision of a divorce judgment to alter maintenance payments under sec. 767.32(1), Stats., can be made only upon a showing of a substantial change in the financial circumstances of the parties. *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 195, 327 N.W.2d 674, 677 (1983). The first step in a substantial change analysis is a factual inquiry. *In re Marriage of Erath v. Erath,* 141 Wis. 2d 948, 953, 417 N.W.2d 407, 409 (Ct. App. 1987). We will sustain a family court's factual determinations if they are not clearly erroneous. Sec. 805.17(2), Stats. The second step requires a conclusion of law: Are the changed circumstances substantial? *Erath* at 956, 417 N.W.2d at 410. *See also In re Marriage of Harris v. Harris,* 141 Wis. 2d 569, 574, 415 N.W.2d 586, 589 (Ct. App. 1987) (we will give weight to the family court's decision that the change is substantial, although that decision is not controlling).

The family court found that Dennis's discharge in bankruptcy prevented Rita from receiving her share

of the marital estate as contemplated in the divorce judgment. Following the bankruptcy Dennis no longer had a legal obligation to pay the credit card debt, property division equalization payment, or the court-ordered contribution to Rita's attorney fees. Rita did not have the property division equalization as a source of income, the credit card creditor was attempting to collect from her, and she had incurred additional attorney fees litigating issues in Dennis's bankruptcy. She testified that she had no funds to pay these debts and would be unable to live without a modification of the maintenance order. The family court's finding that changed circumstances existed is not clearly erroneous. It did not err in determining that the change in circumstances was substantial.

The court's finding of a substantial change of circumstances was premised on the consequences of Dennis's discharge. The fact that Dennis's finances had been earlier subject to the jurisdiction of the bankruptcy court did not prevent the court from considering the parties' present circumstances and modifying maintenance to meet changed circumstances. *See In re Danley,* 14 B.R. 493, 495 (Bankr. D. N.M. 1981); *In re Marriage of Clements,* 134 Cal. App. 3d 737, 745-46, 184 Cal. Rptr. 756, 760-61 (Ct. App. 1982); *Kruse v. Kruse,* 464 N.E.2d 934, 938 (Ind. Ct. App. 1984); *Hopkins v. Hopkins,* 487 A.2d 500, 504 (R.I. 1985).

(b) *The Federal Law Question.*
Dennis contends that because the maintenance modification order "re-creates" discharged debts, it frustrates the "fresh start" objective of the bankruptcy code and violates the supremacy clause of the

United States Constitution. *See Perez v. Campbell,* 402 U.S. 637, 649 (1971) (acts of the state legislatures which interfere with the laws of Congress are invalid under the supremacy clause).

State family law is not preempted by a federal statute unless it "conflicts with the express terms of federal law" and "sufficiently injure[s] the objectives of the federal program to require nonrecognition." *In re Marriage of Jacobs v. Jacobs,* 138 Wis. 2d 19, 26, 405 N.W.2d 668, 671 (Ct. App. 1987), quoting *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 583 (1979). The United States Supreme Court has repeatedly recognized that the subject of domestic relations belongs to the laws of the states and not the federal government. *Jacobs,* 138 Wis. 2d at 26, 405 N.W.2d at 671. Before state action governing domestic relations will be overridden it "must do 'major damage' to 'clear and substantial' federal interests." *Rose v. Rose,* 481 U.S. —, 95 L.Ed. 2d 599, 607 (1987) (citations omitted).

Bankruptcy relief attempts to provide the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Perez,* 402 U.S. at 648. But there are exceptions to which Congress has given priority over the debtor's "fresh start." One such exception is a debt due "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child." 11 U.S.C. sec. 523(a)(5) (Supp. IV 1986). "The imposition of additional support obligations by a state court judge who has ... retained jurisdiction to do so should be properly understood as just one more exception of those kinds of debts Congress considered more important than the fresh start." *Danley,* 14 B.R. at 495.

In *Danley* the court recognized that a modification of support on the basis of changed circumstances caused by the payor spouse's discharge in bankruptcy could frustrate the federal policy of a fresh start. *Id.*, 14 B.R. at 495. However, the court concluded the state family court could modify support and refused to reopen the debtor's bankruptcy to relieve him from the family court's subsequent order.

> [W]here, as here, it is abundantly clear from the decisions of the state trial court that payment by the debtor of the debts later discharged was a significant factor in the initial award, and jurisdiction was carefully reserved to deal with any changed circumstance, it must be conceded that a bankruptcy discharge is such a changed circumstance as to permit state court action.

*Id.*

Other courts have held that post-bankruptcy modifications of support and maintenance orders made by state courts do not run counter to the purposes of the federal bankruptcy code. In *Kruse*, 464 N.E.2d at 938, the husband's discharge in bankruptcy which resulted in foreclosure on the family dwelling warranted increase in child support. The trial court's modification of support was held to not interfere with the husband's discharge in bankruptcy because the effect of the order was not to require the husband to pay any pre-petition debts nor did it determine the dischargeability of those debts. *Id.* The trial court's decision was made regardless of the bankruptcy court's action regarding the pre-petition debts. *Id.*

In *Marriage of Clements*, 134 Cal. App. 3d at 746, 184 Cal. Rptr. at 761, the wife's discharge in bankruptcy of debts which then became the obligation of the

husband justified reduction of the wife's support. The court relied on the fact that the trial court's reduction in support to the bankrupt spouse did not focus on payments to discharged creditors. *Id.* at 745, 184 Cal. Rptr. at 760. The court stated:

> As a matter of policy, domestic relations is considered a field particularly suited to state control, and federal courts have traditionally been inclined to respect the power of state courts to make, modify, and terminate provisions for spousal support. As Justice Holmes said in *Ohio ex rel. Popovici v. Agler* (1930) 280 U.S. 379, 383 ...; "It has been understood that, 'the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States, and not to the laws of the United States.'"

*Id.* (citations omitted). *See also Hopkins,* 487 A.2d at 504–05 (change in financial relationship effected by discharge in bankruptcy entitled family court to modify decree).

The exercise of judicial power modifying spousal support post-bankruptcy is not antagonistic to the federal "fresh start" policy of bankruptcy relief. When modifying maintenance and its duration, the family court must consider the factors under sec. 767.26, Stats. *In re Marriage of Poindexter,* 142 Wis. 2d 517, 531, 419 N.W.2d 223, 229 (1988). The family court's determination of maintenance should be made according to the ability of the payor spouse to pay. *Erath,* 141 Wis. 2d at 956, 417 N.W.2d at 411. In modifying support a court can consider everything having a legitimate bearing on the present and prospective matters relating to the lives of divorcing parties.

*Marriage of Clements,* 134 Cal. App. 3d at 745, 184 Cal. Rptr. at 760. Consideration of these factors should prevent the frustration of the bankrupt's "fresh start." "The federal courts and the state courts are engaged in a cooperative enterprise, not a competitive one." *Danley,* 14 B.R. at 496.

We conclude that a state family court may modify a payor spouse's support obligation under sec. 767.32(1), Stats., following the payor's discharge in bankruptcy without doing "major damage" to the "clear and substantial" federal interests, *Rose v. Rose,* 481 U.S. at —, 95 L.Ed. 2d at 607, served by the bankruptcy code.

## III.

## EQUALIZATION OF PROPERTY DIVISION FROM SALE OF HOMESTEAD

Dennis contends that the family court could not find a change in Rita's financial circumstances from the failure to realize the anticipated gain on the sale of the homestead. The value of Rita's share of the marital estate was determined as of the date of the divorce. *Merten v. National Manufacturers Bank,* 26 Wis. 2d 181, 189, 131 N.W.2d 868, 872 (1965) (husband's property settlement obligation was fixed and determined and wife's right to payment vested on the day of judgment). Dennis's obligation to pay Rita an amount in excess of $6,000 to equalize the property division was not dependent upon realizing a gain on the sale of the homestead. Rita's financial circumstances were subsequently changed when she was

779

unable to realize a substantial portion of her share of the marital estate from the sale of the homestead or from Dennis's obligation to her. The family court did not abuse its discretion in considering those facts.

*By the Court.*—Order affirmed.