IN RE the MARRIAGE OF Susan M. SPANKOWSKI
(ZUERCHER), Petitioner-Respondent,†

v.

David C. SPANKOWSKI, Respondent-Appellant.

Court of Appeals

*No. 91-2810. Submitted on briefs September 14, 1992.—Decided November 4, 1992.*

(Also reported in 493 N.W.2d 737.)

†Petition to review denied.

286

On behalf of the respondent-appellant the cause was submitted on the briefs of *Jennifer M. Wall* of *Brenner, Brenner & Wall* of Waukesha.

On behalf of the petitioner-respondent the cause was submitted on the brief of *Nancy Phelps* of *Blumenthal, Jacquart, Blumenthal, Leib & Phelps, S.C.* of Milwaukee.

Before Brown, Anderson and Snyder, JJ.

ANDERSON, J.   David Spankowski appeals from a judgment modifying a property settlement granted in divorce proceedings after the debt underlying the original settlement was discharged in David's bankruptcy proceedings. Because we hold that the discharge of a property settlement in bankruptcy is not an extraordinary intervening circumstance which would justify granting relief from the judgment under sec.

806.07(1)(h), Stats., and that granting relief from the judgment would violate the supremacy clause of the United States Constitution, we reverse.

On September 9, 1983, Susan and David Spankowski's divorce was granted based on a stipulated marital settlement. The settlement provided that David was to pay Susan the value of one-half of his Wisconsin Retirement System pension, plus interest, according to an arranged schedule. At the time of the divorce, the Wisconsin Retirement System pension plan was not subject to division by a Qualified Domestic Relations Order (QDRO), and it could not be subject to any equitable liens.[1] Maintenance for David was denied, and maintenance for Susan was held open.

On December 8, 1984 Susan remarried.

David filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code on August 25, 1988. David listed Susan as a creditor for the money owed to her for her share of David's pension. Susan did not challenge in bankruptcy court whether the debt was excluded from the bankruptcy estate or exempt from discharge, and made no appearance in David's bankruptcy proceeding. On January 3, 1989, David was granted a full discharge of all his debts.

---

[1] The recent United States Supreme Court decision, *Farrey v. Sanderfoot*, 500 U.S. —, 111 S.Ct. 1825 (1991), does not apply in this case and therefore whether *Farrey* would have retroactive affect need not be addressed. In *Farrey*, the court granting the divorce placed a judicial lien on real property in the property settlement. The Supreme Court's decision concerned whether this judicial lien could be avoided in bankruptcy, thus making the spouse an unprotected, unsecured creditor. Here, no lien could be placed on the pension plan and there was no other property which could provide security for the settlement debt. Thus, Susan already was an unsecured creditor and *Farrey* does not apply.

In a motion dated March 14, 1989, Susan requested the family court that originally divided the marital estate to modify the judgment pursuant to sec. 806.07(1)(b) and (h), Stats.[2]

The court modified the property division under sec. 806.07(1)(h), Stats., to put the parties in the same position they would have been in had David's debts not been discharged in bankruptcy. The court stated that justice required that the property division be changed because "the bankruptcy resulted in total perversion of the intent of the parties and gave a 'windfall' to [David]. Further, the result after bankruptcy is totally inequitable."

The court further concluded that the state's interest in equitable property divisions was sufficient to warrant a modification of the property division in the original judgment after that debt had been discharged in bankruptcy. Moreover, the court determined that the supremacy clause of the United States Constitution did not prevent a state court from modifying the original property settlement when an intervening bankruptcy

---

[2] The relevant subsection of sec. 806.07, Stats., states:

(1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

....

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);

....

(h) Any other reasons justifying relief from the operation of the judgment.

Although Susan's motion requested modification of the judgment based on newly-discovered evidence, she did not address it and the trial court did not consider it in the order from which this appeal was taken.

proceeding altered that settlement. David appeals the family court's order.

■

. As an initial matter, it should be noted that a family court has authority to modify a property division under sec. 806.07, Stats. Although a property division in a divorce is not subject to the court's continuing jurisdiction and may not be modified based on a change of circumstances under sec. 767.32(1), Stats.,[3] sec. 806.07 gives the court discretionary authority to grant relief from the judgment. *Thorpe v. Thorpe,* 123 Wis. 2d 424, 426, 367 N.W.2d 233, 234 (Ct. App. 1985). The term "discretion" encompasses a process of reasoning by the trial court based on facts in the record or those facts which can be reasonably derived by inference from the record and produces a conclusion based on logic and founded on proper legal standards. *Johnson v. Johnson,* 157 Wis. 2d 490, 497, 460 N.W.2d 166, 169 (Ct. App. 1990).

---

[3] Section 767.32(1), Stats., provides in relevant part:

**Revision of certain judgments. (1)** After a judgment providing for child support under s. 767.25 or 767.51, maintenance payments under s. 767.26 or family support payments under s. 767.261 ... the court may, from time to time, on the petition, motion or order to show cause of either of the parties ... revise and alter such judgment respecting the amount of such maintenance or child support and the payment thereof ... and may make any judgment respecting any of the matters which such court might have made in the original action, except that a judgment which waives maintenance payments for either party shall not thereafter be revised or altered in that respect *nor shall the provisions of a judgment with respect to final division of property be subject to revision or modification.* Any change in child support because of alleged change in circumstances shall take into consideration each parent's earning capacity and total economic circumstances. [Emphasis added.]

We are constrained to hold that the family court abused its discretion in reopening the judgment. Relief may be had under sec. 806.07(1)(h), Stats., if extraordinary circumstances exist. *State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 552, 363 N.W.2d 419, 427 (1985). In exercising its discretion to grant relief, the family court should consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments. *Id. M.L.B.* sets forth five such factors, one of which is an "intervening circumstance" justifying relief. *Id.* at 552-53, 363 N.W.2d at 427.

Susan argues that the family court properly decided that David's bankruptcy was an extraordinary "intervening circumstance" because by allowing David to retain the couple's only significant asset, David was provided a windfall; this windfall disturbed the prior just judgment splitting their property fifty-fifty. *See id.* She argues that the reopening of the judgment furthers the intent of the parties and the court at the time of the divorce; thus, it enhances the interest of finality of the prior judgment.

David argues that the family court abused its discretion because bankruptcy was a legal possibility known to Susan and her attorney at the time of the divorce and therefore was not an "intervening circumstance." Furthermore, Susan had both notice of the bankruptcy filing and the opportunity to object, thus putting her in the same position as other creditors. He questions why Susan should be given special treatment when other creditors cannot reinstate a discharged debt.

In this case, we have a circumstance not contemplated by the parties which rendered the prior judgment unenforceable. Although we have noted that a *change* in

the law may justify relief from a divorce judgment's property division under sec. 806.07, Stats., *see Tozer v. Tozer,* 121 Wis. 2d 187, 189, 358 N.W.2d 537, 539 (Ct. App. 1984), the bankruptcy laws which operated to discharge the settlement have not changed from the time of the initial divorce settlement and judgment. The fact that a settlement appears by hindsight to have been a bad bargain is not sufficient by itself to set aside a judgment. *Pasternak v. Pasternak,* 14 Wis. 2d 38, 46, 109 N.W.2d 511, 515 (1961).

These rules have a particularly harsh result in this case: even if Susan had known of the laws' possible effects, she could not have protected herself through the property settlement because the only asset of the marriage was a pension, to which a lien could not attach. However, this court is an error-correcting court. *Hillman v. Columbia County,* 164 Wis. 2d 376, 396, 474 N.W.2d 913, 920 (Ct. App. 1991). To deviate from these rules based on equitable and policy considerations is an action which can only be done by the supreme court using its law-developing or law-declaring powers. *See State v. Schumacher,* 144 Wis. 2d 388, 407, 424 N.W.2d 672, 679 (1988). Unfortunately, the supreme court denied our certification of this case, and therefore we are obliged to hold that the family court abused its discretion in granting relief from the judgment.

Even if we were able to grant relief, without guidance from our supreme court we are obliged to agree with David that a modification of the property settlement would violate the supremacy clause. David argues that the federal interest in providing debtors with a fresh start preempts the state's interest in equitable divorce settlements under the supremacy clause. Therefore, because property settlements are dischargeable in bank-

ruptcy, *see* 11 U.S.C. § 523(a)(5), and because Susan had notice of David's bankruptcy proceeding and elected not to challenge, it is inappropriate for a family court to grant relief for the divorce judgment after the federal bankruptcy court discharged the original property settlement.

■

Susan argues that the supremacy clause does not bar reopening the divorce judgment because the state has an interest in equitable property settlements. *United States v. Yazell,* 382 U.S. 341, 352 (1966). In order for a federal law to preempt that state interest, "[s]tate family and family-property law must do 'major damage' to 'clear and substantial' federal interests." *McCarty v. McCarty,* 453 U.S. 210, 220 (1981) (quoting *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581 (1979)).[4] Susan argues that she is not questioning David's right to a fresh start under the federal bankruptcy code, but only his right to bankruptcy protection at her expense; therefore, the federal interest remains intact.

The United States Supreme Court established a two-part inquiry to determine if a federal law preempts the state's interest in domestic relations: "[T]he pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." *Id.* at 221.

Implicit in *McCarty* is a balancing of the state interest in equitable property divisions with the objectives of the federal statute. *See id.* at 237 (Rehnquist, J., dissenting). However, no Wisconsin court has revealed how the

---

[4] In *McCarty,* the Court held that the supremacy clause bars a state court from dividing military nondisability retirement pay between ex-spouses pursuant to the state community property law. *McCarty v. McCarty,* 453 U.S. 210, 235-36 (1981).

balance must be struck between this state's interest and the protection offered by the federal bankruptcy laws when the discharged debt is a property settlement.

The Vermont Supreme Court dealt with a situation similar to that of the Spankowskis in *Fitzgerald v. Fitzgerald*, 481 A.2d 1044 (Vt. 1984). The court held that a property settlement which was incorporated into a divorce decree could not be reopened, even if fraud and misrepresentation were alleged as the bases for reopening the judgment. *Fitzgerald*, 481 A.2d at 1046. The court reasoned that the "[d]efendant's distinction between seeking to enforce a discharged debt and trying to challenge the judgment which created the debt is illusory. For defendant to reopen proceedings in state court on this issue [of fraud] would be an attempt to readjudicate the personal liability of plaintiff on his discharged debt in violation of [11 U.S.C.] § 524(a)(2)."[5] *Fitzgerald*, 481 A.2d at 1046.

The Minnesota Court of Appeals also has held that a property settlement cannot be reopened after the bankruptcy of one spouse discharges the property settlement. *Coakley v. Coakley*, 400 N.W.2d 436, 440 (Minn. Ct. App. 1987). The court would not allow the reopening of the judgment even though the divorce judgment explicitly provided that either party could move to reopen if the husband filed for Chapter 7 relief under the Bankruptcy Code. In support of its conclusion, the court stated that the reopening of the judgment would deny the husband the protection granted him in bankruptcy

---

[5] 11 U.S.C. § 524(a)(2) provides that a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

and circumvent the bankruptcy discharge. *Id.* However, the court provided the wife relief by modifying the maintenance award, holding that the discharge in bankruptcy created a substantial change of circumstances making the original division unfair.[6] *Id.* at 440-41. In this way the court was able to protect the state's interest, while still keeping the Bankruptcy Code's discharge intact.

The family court found these cases unpersuasive and poorly reasoned, although it acknowledged that it had little authority to support its contrary holding to grant relief from the judgment. Neither case explicitly applied a supremacy clause analysis to balance the state's interest in fair and equitable property divisions and the Bankruptcy Code's objective of giving the debtor a fresh start. The family court held (and Susan argues on appeal) that under the facts of this case, the balance of the state's interest and the Bankruptcy Code's objective swings in the state's favor, allowing the state to reinstate the property division. In support of its position, the family court looked at the language we used to support our decision in *Eckert v. Eckert,* 144 Wis. 2d 770, 424 N.W.2d 759 (Ct. App. 1988), although it recognized that the holding was not directly applicable because that case involved the modification of maintenance, not a property settlement.

---

[6] Here, maintenance was denied to David, but Susan's maintenance was held open. Susan argues that as an alternative to modifying the property settlement, we should modify the maintenance award. This argument has no merit because Susan has since remarried and maintenance is not allowed to individuals once they are remarried. Section 767.32(3), Stats. Furthermore, Susan did not ask the lower court for this remedy, so we need not address it. *See Winkel v. Production Credit Ass'n,* 153 Wis. 2d 550, 557, 451 N.W.2d 440, 443 (Ct. App. 1989).

On appeal Susan also argues that the bankruptcy laws contain exemptions in order to carry out substantial justice between debtors and creditors and implies that because the federal and state courts are engaged in a cooperative enterprise, the state courts also can take actions which would further this substantial justice interest. Susan intimates that this interest was the basis for this court's analysis in *Eckert.*

In *Eckert,* this court addressed the argument of the debtor that because the maintenance modification order "recreated" the discharged debts, it thereby frustrated the "fresh start" objective of the Bankruptcy Code and violated the supremacy clause. We used the *McCarty* test of the Supreme Court to determine whether the modification violated the supremacy clause. We recognized that the interest of a fresh start was considered less important by Congress than support obligations to a former spouse because those obligations are explicitly an exception to discharge through 11 U.S.C. § 523(a)(5). *Eckert,* 144 Wis. 2d at 776, 424 N.W.2d at 761-62. We also noted that a judge's determination of maintenance should be made according to the ability of the payor spouse to pay and after the consideration of everything affecting present and prospective matters relating to the lives of the divorcing parties.*Id.* at 778, 424 N.W.2d at 762. The judge's reflection on these factors would prevent the frustration of the bankrupt's fresh start. *Id.* at 779, 424 N.W.2d at 762.

These justifications became the bases for our conclusion that the modification would not do "major damage" to the "clear and substantial" federal interests. Since Congress did not find the fresh start objective frustrated by allowing support debts to survive bankruptcy, it followed that a modification would not frustrate that objective either, especially since federal courts

recognize that the subject of domestic relations is particularly suited to state control and the state law takes into consideration the financial position of the debtor. In *Eckert,* therefore, the court's action was consistent with the policy of the Bankruptcy Code.

It would be inappropriate for us to extend *Eckert* in the present situation. Unlike support obligations, property divisions are *not* excepted from discharge by 11 U.S.C. § 523(a)(5). In fact, a hotly litigated issue in bankruptcy proceedings is determining whether a debt is a support payment or property settlement. When Congress adopted the Bankruptcy Code in 1978, it specifically rejected the proposal of the Commission on the Bankruptcy Laws of the United States to except from discharge all property settlements in connection with divorce. *See* COMM'N ON THE BANKRUPTCY LAWS OF THE U.S., REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE U.S. JULY 1973 PART II, H.R. DOC. NO. 137, 93rd Cong., 1st Sess. 136, 139 (1973), *reprinted in* 2 L. KING, COLLIER ON BANKRUPTCY app. (15th ed. 1992). More recently, a bill is pending in the house to do the same, but so far has not been passed. H.R. 1242, 102nd Cong., 1st Sess., 137 CONG. REC. H1414 (1991).

Federal courts and commentators also note that 11 U.S.C. § 523(a)(5) represents an attempt by Congress to balance the competing policy considerations of providing a debtor with a fresh start and of not allowing a debtor to neglect divorce obligations to a former spouse and children. *Forsdick v. Turgeon,* 812 F.2d 801, 802 (2d Cir. 1987); *Long v. Calhoun,* 715 F.2d 1103, 1106 (6th Cir. 1983); *Hansel v. Hansel,* No. 92-C1095, slip op. at 7-8 (N.D. Ill. Oct. 2, 1992) (1992 U.S. Dist. LEXIS 14988). *E.g.,* Gold, *The Dischargeability of Divorce Obligations Under the Bankruptcy Code: Five Faulty Premises in the Application of Section 523(a)(5),* 39 CASE W. RES. L.

REV. 455, 457 (1988-89); Fibich & Floyd, *Impact of Bankruptcy on Family Law*, 29 S. TEX. L. REV. 637, 648 (1988).

Finally, while the modification of maintenance payments under sec. 767.32(1), Stats., requires the consideration of the payor spouse's ability to pay, *Eckert*, 144 Wis. 2d at 778, 424 N.W.2d at 762, the judge does not have to take the payor spouse's ability to pay into consideration when granting relief from the divorce judgment and modifying the property settlement. *See* sec. 806.07(1), Stats. The state law which allows the reopening and modification of judgments has a greater possibility of frustrating the debtor's fresh start under the Bankruptcy Code.

We think that in the absence of any authority from our own supreme court on this matter, the holdings of *Fitzgerald* and *Coakley* are instructive. Although neither court explicitly applied a supremacy clause analysis, their decisions are consistent with our holding today that Congress has already balanced the federal and state interests in its enactment of 11 U.S.C. § 523(a)(5) and that state laws cannot be used to bypass that balancing, especially when there are no safeguards to the federal interest. Accordingly, we hold that a modification of a property settlement after the debt was discharged in bankruptcy is a violation of the supremacy clause.

*By the Court.*—Judgment reversed.