IN RE the MARRIAGE OF: Patricia R. LYMAN, Petitioner-Respondent,

v.

John M. LYMAN, Respondent-Appellant.

Court of Appeals

*No. 93–0349. Submitted on briefs November 3, 1993.—Decided April 19, 1994.*

(Also reported in 516 N.W.2d 767.)

For the respondent-appellant the cause was submitted on the briefs of *Richard A. Frederick*, of Milwaukee.

For the petitioner-respondent the cause was submitted on the joint briefs of *Eugene A. Kershek* of West Allis and *Cristie Coates Leto* of Racine.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SULLIVAN, J.  John M. Lyman appeals from a final order which modified a judgment of divorce and determined that the lump-sum settlement awarded to

Patricia R. Lyman was maintenance. The order continued Patricia's maintenance award indefinitely and determined that it was not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(5) of the United States Bankruptcy Code. John does not appeal from that part of the order which left in effect previous contempt adjudications.

John raises the following determinative issues: (1) whether the trial court erroneously modified the divorce judgment under § 806.07(1)(g) & (h), STATS.; and (2) whether the trial court erroneously determined that the lump-sum settlement provision, which was to be paid over time, was maintenance, and hence, not dischargeable in bankruptcy. We conclude that the trial court erred in both respects.

This ten-year marriage terminated in divorce in 1981. In the judgment of divorce, the parties stipulated to the contents and value of the estate and to a $90,000 settlement for Patricia payable in installments of $9,000 annually over a period of ten years and three months. In 1984, the court found that John perpetrated a fraud upon the court in undervaluing the principal asset of the estate, his lawn and garden business. The court vacated the judgment of divorce and the stipulation upon which it was based on the grounds of fraud under § 806.07(1)(c), STATS., increased Patricia's award and extended the annual payments. In 1985, a second modification of the judgment was made which, *inter alia,* vested Patricia with a lien upon John's property, real and personal, and directed John to sell and apply the proceeds to his obligation. John liquidated certain assets, but made no payment to Patricia.

In 1992, a family court commissioner certified John to the circuit court for contempt for his 1989 sale of a parcel of real estate that was subject to Patricia's

126

lien and his failure to remit the proceeds to Patricia as required by the 1985 order of modification.[1] On January 24, 1992, adopting the findings of the family court commissioner, the court found John in contempt, sentenced him to six months in the Milwaukee County House of Correction, and set a purge condition that by January 28 he give to Patricia a $175,000 IRA which he owned. On January 27, however, John filed a petition for bankruptcy in the Southern District of Illinois.

Patricia then filed a "motion for relief from automatic stay" in the bankruptcy court.[2] On March 17, 1992, the bankruptcy court made the following ruling: "that the motion for relief from stay filed by Patricia Lyman is granted to allow the movant to pursue the issue of dischargeability in the State Court with the

---

[1] At John's contempt hearing, the family court commissioner found that John received payment of $98,886 from the sale. John stated that he applied the funds to payment of tax liens.

[2] This record on appeal contains a copy of this motion. In the motion, Patricia recited the facts of the continuing divorce action, her status as a lienholder, John's subsequent sale of assets without payment to Patricia, the resulting contempt proceeding, and the fact that the bankruptcy proceeding had automatically stayed all state court proceedings including the contempt proceedings. Patricia then requested the following relief from the bankruptcy court:

> That the plaintiff is requesting an order of the Court lifting the stay and proceedings as it relates to her and an order permitting the State Court of Milwaukee County, Wisconsin to impose sanctions for his fraudulent conduct for the following reasons:
>
> A) That the plaintiff is a secured creditor.
>
> B) Should not be granted relief of the Bankruptcy Court on the basis that he has committed fraud upon the plaintiff in selling mortgaged property.

caveat not to act on any judgment without further order of this court."[3]

Patricia then filed an affidavit with the Milwaukee County Circuit Court, recounting the history of the case and informing the court of the relief from the automatic stay granted by the bankruptcy court. In that affidavit, Patricia asserted the following arguments for non-dischargeability of the debt: (1) that she held a mortgage lien that was not dischargeable in bankruptcy; (2) that her claim was founded upon John's fraud committed upon the court at the divorce trial and his sale of property in violation of Patricia's lien rights; (3) that the claim could not be dischargeable in bankruptcy because it was a claim for spousal support; and (4) that the claim was not dischargeable because, as represented in the 1985 order modifying the divorce judgment, John had agreed that the debt was not dischargeable.[4] Patricia then moved for an order of the

[3] From this court's own research, it appears that the bankruptcy court has discretion to defer the dischargeability determination to the state courts. *See In re Moralez*, 128 B.R. 526, 527-28 (Bankr. E.D. Mich. 1991); *see also In re Reak*, 92 B.R. 804, 807 (Bankr. E.D. Wis. 1988) (state court has concurrent jurisdiction with bankruptcy court to decide whether divorce judgment awarded maintenance or property distribution); *Hopkins v. Hopkins*, 487 A.2d 500, 503 (R.I. 1985) (concurrent jurisdiction in matters concerning dischargeability of support or maintenance debts). The bankruptcy court's minutes indicate: "However, [it] is possible that the state [court] will rule on dischargeability with respect to maintenance, and that would constitute res judicata, as that [court] has concurrent [jurisdiction] to decide that issue." *See, e.g., In re Reak*, 92 B.R. at 807.

[4] The bankruptcy court's ruling is ambiguous as to which issues it referred to the state court. The parties have not raised any concern regarding which of these theories of dis-

court finding that her claim was not dischargeable in bankruptcy.

Patricia, her attorney, and John's attorney appeared on the motion October 13, 1992. The parties explained that they appeared before the court on the issue of the dischargeability of Patricia's claim. The court, however, chose to revisit the matter of the contempt citation and noted that John had not met the purge condition of the contempt citation, and instead, had declared bankruptcy.[5] The court indicated that it would hear the dischargeability issue on November 16. The court told the attorneys: "I'll give you an opportunity to offer evidence and case law to that effect."

On November 16, Patricia and the attorneys appeared again in court. The court began by explaining, "I am reluctant to say give me your arguments, counsel, because you don't know what I'm thinking . . . . So the best thing I can do as a judge is tell you where I want you to argue and you argue anywhere you want to, but these are the areas that I need help . . . ." The

chargeability were properly before the state court for determination under the bankruptcy court's relief from the automatic stay. The record on appeal contains court minutes from the bankruptcy court, in which the court explains that the state court cannot decide the issue of whether the debt was dischargeable on the basis of fraud or conversion because the bankruptcy court has exclusive jurisdiction over those matters. *See, e.g., Aldrich v. Imbrogno*, 34 B.R. 776, 779 (Bankr. 9th Cir. 1983).

[5] Although Patricia made no request for such action, the court instructed Patricia's attorney to speak with the District Attorney's office to seek extradition of John, from Illinois, on the contempt matter, because John failed to appear before the court. In addition, the court, *sua sponte*, appointed a special prosecutor in the event that the District Attorney's office declined to handle the matter.

court then indicated its desire to "get finality, . . . create due process and fairness," as well as comply with the applicable law, including bankruptcy law. The court then turned its attention to a brief in support of summary judgment that had been filed in bankruptcy court, and, in particular, that portion of the brief that dealt with the issue of whether the divorce judgment ordered maintenance or a property division.[6]

Under 11 U.S.C. § 523(a)(5), claims for property division are dischargeable in bankruptcy, while claims for spousal maintenance are nondischargeable. The court noted that the final stipulation of the parties, which was made part of the divorce judgment, explicitly denied maintenance to both parties. The stipulation characterized the cash transfer from John to Patricia as a lump-sum settlement to be paid over ten years and three months. The court then recited the prior instance where the court had found fraud, and John's continued failure to comply with court orders. The court then stated: "Court reopens the whole thing under 806.07, because part of the waiver of spousal maintenance . . . is based upon an honest, truthful division of the marital estate that's not saturated with fraud, and untruthful statements, and non-disclosure of assets, and misrepresentations, and retry the division of the marital estate, along with her right to claim spousal maintenance, and freeze all assets in the bankruptcy court that relate at all to the marital estate . . . ." The court also indicated that the criminal contempt matter could proceed.[7] Finally, the court indicated that it would hear arguments.

---

[6] John's summary judgment motion was denied by the bankruptcy court on November 9, 1992.

[7] The court also indicated that the criminal contempt matter and the extradition should proceed and that John should be

John's attorney then argued that the contempt proceedings should be stayed by the bankruptcy because the condition set on the original civil contempt was that John could purge the contempt by tendering the $175,000 IRA that was now subject to the bankruptcy proceeding.[8] Following a lengthy discussion on that matter, John's attorney turned to the issue of "maintenance versus property," and argued that maintenance was denied in the divorce judgment, and that the subject of the last ten years of litigation was unpaid property division and not unpaid maintenance. The court interrupted and the following exchange occurred:

> COURT:  I'll tell you how you could solve that issue right now, is you can put [Patricia] on the witness stand, adversely, and I am fairly convinced . . . that if you cross examined her without [her attorney] saying a word, she's going to say, number one, I entered into a marital settlement agreement; number two, the reason I waived alimony was because of the affirmations made on the division of marital estate on the property settlement, because it provided enough for me, and if I would have known my husband was going to lie, cheat and misrepresent and fraud, I never would have . . . waived spousal maintenance. I want spousal support. And if you want to put her on the witness stand, and have her testify at an evidentiary hearing, I will go through that pro forma process . . . .

brought before the court "to show cause why he should not serve thirty days in jail under the criminal contempt sanctions for failure to appear here on the 28th, as ordered, and not complying with the court's orders earlier to be here on that date, same as a failure not to appear on a subpoena or a bench warrant, and why I should not let the purge citation to continue . . . ."

[8] The issues raised by this argument are not addressed on appeal.

MR. CONEN [husband's attorney]: I think from the statements that the court has made she would already know how to indicate.

COURT: No, she isn't going to lie under oath . . . .

Mr. Conen then continued his argument to the court regarding the character of Patricia's claim. He pointed out that the original, as well as the modified judgment based on the fraud, provide that maintenance was denied. He further argued that he believed that the federal bankruptcy judge had intended that the matter be decided in a "full-blown hearing" and indicated that the parties should be entitled to scheduling orders, depositions and a trial. He argued that the question of whether the payments were maintenance or property division should be decided based on federal law and cited factors for the court to consider in making the determination, such as the fact that the payments were to be made annually rather than monthly, and that the original $90,000 amount was based upon a marital estate of about $250,000. Mr. Conen indicated that the parties were both employed at the time of the stipulation, that there were no children of the marriage, and that the husband had a modest income at the time.

After further arguments, Patricia's attorney, Mr. Kershek, responded: "I appreciate the fact that the court thinks that this should be reopened as to the maintenance issue, and I . . . have no problem with that. I think that the court has to decide whether or not the settlement was in fact a trade-off with maintenance."

Without a request by either party, the trial court then called Patricia to the stand and asked her:

Q: Did you hear the conversation I've had with both lawyers?
A: Yes.
Q: And the comments that if you got up here and testified that the reason you took the property settlement and waived formally spousal maintenance is that the property settlement would be a means to allow you to have support, get on with your life?
A: Yes.
Q: Is that all true?
A: That is true.
Q: Your lawyer didn't plant that seed?
A: No. He has not.
Q: Judge didn't plant that seed?
A: No, he did not.

The trial court then allowed counsel an opportunity to question the witness. Mr. Conen asked the witness questions regarding what she and her husband had discussed when entering into the stipulation and she replied that she thought the whole amount was maintenance but she didn't recall any discussion as to whether the monetary settlement was for maintenance or property distribution. She also believed that the way the payments were structured had something to do with tax consequences.[9] She knew that she later requested the court to modify the judgment due to the suspected undervaluation of the principle marital

---

[9] The stipulation signed by both parties provided that the debt be paid to Patricia over a period of ten years and three months. *See, e.g., Messnick v. Messnick,* 104 B.R. 89, 93 (Bankr. E.D. Wis. 1989) (wife's percentage of marital estate "was payable over 126 months, not because the payments were not a division of property, but to take advantage of the deductibility of the periodic payments made over ten years under § 71 of the Internal Revenue Code in effect at the time").

asset and that the marital estate was eventually re-evaluated. Patricia's attorney then began to question her about her employment circumstances at the time she signed the stipulation. Patricia explained that she quit her job about the time she got married and began to work at her husband's business. The court interrupted the examination, however, and the following discussion took place:

> THE COURT: I don't need all this, Mr. Kershek. Ma'am, you would never have agreed to any division of the marital estate — strike that. Ma'am, you wouldn't have waived alimony or spousal maintenance if you didn't think you were getting a fair, equitable and just division of the marital estate, is that correct?
>
> A: This is correct.
>
> THE COURT: And you needed that money to live on, right?
>
> A: Yes, I did.
>
> THE COURT: All right. You're not independently wealthy?
>
> A: I am not independently wealthy.
>
> THE COURT: If you had known that he was lying to you on how all the assets are — strike that. If you knew he was lying then as to the way things were divided, you probably wouldn't have waived spousal maintenance, which was then called alimony, is that correct?
>
> A: That is correct.

The court concluded that Patricia was credible, and that she believed, in the court's own words, "I got a stipulation to resolve this, I'm going to have X amount of dollars to live on, I don't have to go to the gutters or the streets . . . ." The court then further discussed John's contempt matter and the previously adjudicated instances of "fraud" that resulted in the previous modi-

fications of the judgment. The court noted that John continued the "fraud" by leaving the state and filing for bankruptcy after he was found in contempt and ordered to turn over his $175,000 IRA. Finally, the court resolved the case with the following ruling:

> [T]he easiest way to prevent the fraud from continuing is to find that the true intentions of the parties, based upon what the true intentions of the parties, based upon what has occurred here for the last twelve years, was to provide funds so that the wife could live, and that's in the form of support. And under rule 806.07 (1)(g) and (h), (g) says it's no longer equitable that the judgment should have prospective application, and (h) says any other reasons justifying relief from the operation of the judgment. And extraordinary circumstances exist under sub. (h).

> The court finds that it's in the nature of spousal maintenance. The case and the judgment's reopened and it's modified to find it to be spousal maintenance held open indefinitely. And that's the judgment of the court.

Finally, the court found Patricia's claim for maintenance to be non-dischargeable under 11 U.S.C. § 523(a)(5).

John appeals this ruling and argues that the trial court erroneously modified the judgment under § 806.07(1)(g) & (h), STATS. John contends that the court was without jurisdiction to modify the judgment to provide for maintenance because the original judgment, as well as the subsequent modification of that judgment, had indicated that the parties waived maintenance. *See* § 767.32(1), STATS. ("a judgment which waives maintenance payments for either party shall not thereafter be revised or altered in that respect nor

shall the provision of a judgment with respect to final division of property be subject to revision or modification"); *Johnson v. Johnson*, 37 Wis. 2d 302, 308, 155 N.W.2d 111, 113 (1967) ("[A] judgment that provides for final distribution of the estate without making any provision for alimony cannot thereafter be modified to include alimony.").

Patricia relies on the two provisions of § 806.07(1)(g) and (h), STATS., for granting relief from the judgment:

> **806.07 Relief from judgment or order. (1)**  On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> . . . .
>
> (g)  It is no longer equitable that the judgment should have prospective application; or
>
> (h)  Any other reasons justifying relief from the operation of the judgment.

Patricia cites the following: "[a]lthough a property division in a divorce is not subject to the court's continuing jurisdiction and may not be modified based on a change of circumstances under sec. 767.32(1), Stats., sec. 806.07 gives the court discretionary authority to grant relief from the judgment." *Spankowski v. Spankowski*, 172 Wis. 2d 285, 290, 493 N.W.2d 737, 740 (Ct. App. 1992).[10]

---

[10] In *Spankowski*, this court concluded that a discharge of a property division debt in bankruptcy, was not an "extraordinary circumstance" that would justify a modification of a property division under § 806.07(1)(h), STATS., and that allowing such a modification after discharge in bankruptcy would violate the supremacy clause because the federal interest in providing a

Regardless of the parties' arguments on the issue of whether the trial court *could* grant relief under § 806.07, STATS., and without expressing any opinion on that matter, we find most persuasive John's argument that the court *should not* have proceeded under § 806.07 because neither party had filed a motion for modification under § 806.07, neither party had notice that such a motion would be entertained, and neither party was prepared to argue that motion. The parties were present in state court pursuant to a stay granted by the bankruptcy court to argue the matter of dischargeability of the debt. John argues that the trial court's action took him by surprise and was improper. We agree. While we understand the trial court's frustration with the progression of the case, it appears to this court that the trial court's *sua sponte* action pursuant to § 806.07 was the trial court's blatant attempt to *prevent* dischargeability of the debt rather than to

"fresh start" under the bankruptcy code preempts the state's interest in equitable divorce settlements. *Spankowski v. Spankowski*, 172 Wis. 2d 285, 291-92, 493 N.W.2d 737, 740-41 (Ct. App. 1992). *Spankowski* did not address the issue of maintenance and the request for modification was made *after* the property division debt had been discharged in bankruptcy.

In *Eckert v. Eckert*, 144 Wis. 2d 770, 772-75, 424 N.W.2d 759, 760-61 (Ct. App. 1988), the trial court extended the term of the wife's maintenance due to a change in circumstances and pursuant to § 767.32(1), STATS. This court affirmed the modification and held that a discharge in bankruptcy of the property division owed to the ex-spouse, and the effect this discharge has on the financial circumstances of the ex-spouse, can be the basis for a subsequent modification of the maintenance award. *Id.* at 774-75, 424 N.W.2d at 761. We also concluded that the modification did not violate the supremacy clause. *Id.* at 775-79, 424 N.W.2d at 761-63.

fairly *determine* the dischargeability of the debt.[11] Under the circumstances, we conclude that the trial court erroneously reopened and modified the judgment of divorce.

Although the matter was not before the trial court on a § 806.07, STATS., motion, it was before the court for a determination on the character of the debt. Even if the trial court erroneously exercised its discretion in modifying the judgment under § 806.07 to grant maintenance, we will examine whether the trial court ultimately came to the correct conclusion that the debt was not dischargeable in bankruptcy because it was in the form of maintenance.

"[W]hether a liability is a dischargeable property division or a nondischargeable support obligation is a federal and not a state law question," though the court may consider state law in reaching its conclusion. *Messnick v. Messnick*, 104 B.R. 89, 92 (Bankr. E.D. Wis. 1989). The party objecting to the discharge bears the burden of proving, by a preponderance of the evidence, that the debt is nondischargeable. *Id.* The court's inquiry is directed at determining "whether the parties or the divorce court intended the obligation to be in the nature of a property division or support and whether the actual effect of the obligation resulted in a property division or provided support." *Id.* Factors that the court may consider in making the determination include:

1. Whether a maintenance award is also made for a spouse.

---

[11] Even if the motion had been properly before the court, we question whether § 806.07, STATS., can appropriately be used to, in essence, sanction a party for non-payment of a judgment.

138

2. Whether there was a need for support at the time of the divorce and whether support would be inadequate absent the obligation in question.

3. Whether the court intended to provide for support by the obligation in question.

4. Whether the debtor's obligation terminated at the death or remarriage of the recipient spouse.

5. Whether the amount or duration of payments can be altered upon a change of circumstances.

6. The age, health, educational level, work skills, earning capacity and other financial resources of the parties independent of the obligation in question.

7. Whether payments are extended over time or are in lump sum.

8. Whether the debt is characterized as property division or support under state law.

9. Whether the obligation balances disparate incomes of the parties.

10. Tax treatment of payments.

11. Whether one party relinquished a right to support under state law in exchange for the obligation in question.

*Id.* at 92-93.

As an initial matter, we agree with Patricia's argument that there is no case law requiring the trial court to consider every one of the factors in making its determination. Nonetheless, John makes a forceful argument, and Patricia concedes, that when applying many of these factors to the case at hand, one could conclude that Patricia's claim is in the nature of property distribution. This court recognizes, however, that other factors lead to the contrary conclusion and we express no opinion on the ultimate issue of whether the claim is in fact one for support or property distribution.

In carefully considering the trial court's determination of the nature of Patricia's claim, however, it appears that the trial court did not make its decision based upon rational consideration of these, or other, relevant factors. Rather than considering any of the enumerated factors, the trial court relied solely upon Patricia's responses to the court's own questions regarding whether she "needed the money." Yet, the court heard no testimony, and made no factual findings as to the earning capacity or financial status of the spouses at the time of the divorce. The court, in fact, prevented Patricia's attorney from eliciting such testimony. There is no indication that the trial court considered any relevant facts of record in reaching its decision. Under these circumstances, we conclude that the trial court erroneously determined that Patricia's claim was for support and maintenance and not dischargeable in bankruptcy.

As the party opposing discharge of the debt in bankruptcy, Patricia bore the burden of proof to establish that the debt was one for maintenance rather than property division. Although we conclude that the trial court's error requires reversal, we do not conclude that Patricia *failed* to sustain her burden of proof; rather, the trial court *prevented* her from attempting to do so.

In summary, the case was before the trial court, pursuant to the bankruptcy court's lifting of the automatic stay. The parties appeared before the trial court fully expecting a fair determination as to the dischargeability of Patricia's claim. The parties were entitled to a fair hearing on the matter. To date, *both* parties have been prevented from presenting arguments and any necessary evidence to the trial court concerning the dischargeability of the debt. Thus, we

remand for a fair determination as to the nature of Patricia's claim.[12]

*By the Court.*—Order reversed and cause remanded.

---

[12] Because the issue is not briefed and the record on appeal contains no insight from the bankruptcy court, we express no opinion as to which of Patricia's theories of nondischargeability may be argued in the state court upon remand.