IN RE the MARRIAGE OF: James W. JEFFORDS, Petitioner-Respondent,

v.

Pamela SCOTT (Jeffords), Respondent-Appellant.

Court of Appeals

*No. 00–0525. Submitted on briefs October 23, 2000.—Decided December 13, 2000.*

## 2001 WI App 6

(Also reported in 624 N.W.2d 384.)

On behalf of the respondent-appellant, the cause was submitted on the brief of *Daniel J. Weiss*, of *Daniel J. Weiss, S.C.*, Mequon.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Richard E. Reilly* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown*, Milwaukee.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1.  ANDERSON, J.  Pamela Scott (Jeffords) insists that the family court erroneously exercised its discretion in modifying the property division after a loan she received from James W. Jeffords, in anticipation of the property division, was discharged in bankruptcy. We reject her argument because the court properly exercised its discretion in clarifying James's obligations to provide Pamela with a Qualified Domestic Relations Order (QDRO) representing an interest in his 401k plan. We also reject her request for interest on the QDRO. Therefore, we affirm.

¶ 2.  James and Pamela were divorced on January 28, 1997. As part of the divorce, they entered into a marital settlement agreement (MSA) to resolve all of the issues relating to the property division. The portions of the agreement pertinent to this appeal provided that (1) James was to keep the "Jeffords Motor Car Co. 401k plan subject to the amount awarded to Pamela below"; (2) Pamela was to receive "$100,000 from the Jeffords Motor Car 401k plan via Qualified Domestic Relations Order"; and (3) the transfer of the QDRO from James to Pamela was conditioned upon Pamela's repayment of a loan:

> James has provided an interest free loan of $50,000.00 to Pamela in anticipation of this agreement. The loan shall be repaid to James upon Pamela's receipt of the $100,000.00 payment from the 401k plan as set forth above.

¶ 3.  In August 1998, Pamela filed for voluntary bankruptcy and listed James as an unsecured creditor. Her discharge in bankruptcy included the $50,000 loan referenced in the MSA. In May 1999, James sought clarification of the divorce judgment in the circuit court:

[A]s to the $50,000 owed to James by . . . Pamela . . . and the $100,000.00 owed to Pamela by James from the Jeffords Motor Car retirement plan in view of the fact that Pamela has been adjudged bankrupt as to the $50,000 debt to James and the clear intention of the parties at the time of divorce was that James would off-set the $50,000 owed to him by Pamela against the obligation to pay Pamela a portion of his retirement plan.

¶ 4. After an evidentiary hearing, the family court began with the proposition that it is a court of equity and can grant relief under WIS. STAT. § 806.07(1)(g) (1997–98).[1] The court concluded that under a literal reading of the MSA, James's obligation to provide a QDRO to Pamela was preconditioned upon her repayment of the $50,000 loan, but because she failed to repay the loan, James could be excused from providing the QDRO. However, the court determined that it would do equity for the reason that the MSA manifested the parties' intent that there was to be an equitable property division. The court reasoned that the MSA provided a quid pro quo approach to the QDRO and repayment of the loan and ordered James to provide a $50,000 QDRO.

¶ 5. Pamela filed a motion for reconsideration asserting that the court erred because the decision did not (1) follow U.S. bankruptcy law and (2) did not follow Wisconsin case law dealing with the U.S. Bankruptcy Code. The family court denied her motion and she appeals.

¶ 6. Although Pamela does not question the authority of the family court to grant relief to James,

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

we note that the Wisconsin Supreme Court recently acknowledged that:

> [T]he legislature and the courts recognize that a final division of property in a divorce judgment does not always resolve all matters between the parties and that remedial action by the circuit court may be needed to effectuate the objectives of the final division without disrupting the finality of the judgment. While the final division of property in a divorce judgment is indeed final, the jurisdiction of the court "continue[s] until the property [is] disposed of pursuant to the provisions of the division contained in the judgment of divorce." Section 767.01(1) vests in the circuit courts the authority to do all things "necessary and proper" in actions affecting the family and "to carry [the courts'] orders and judgments into execution."

*Washington v. Washington*, 2000 WI 47, ¶ 14, 234 Wis. 2d 689, 611 N.W.2d 261 (citations and footnote omitted).

¶ 7. In this appeal, Pamela contends that the family court mistakenly used its discretion to reopen the property division and fashion an equitable remedy. The test on review of the family court's order is: Was the order a proper exercise of discretion? *See Conrad v. Conrad*, 92 Wis. 2d 407, 414, 284 N.W.2d 674 (1979).

¶ 8. Pamela builds her argument upon our decision in *Spankowski v. Spankowski*, 172 Wis. 2d 285, 493 N.W.2d 737 (Ct. App. 1992). She insists that *Spankowski* stands for the proposition that the interest-free $50,000 loan was discharged in bankruptcy and any attempt to revive or recreate the debt in family court would violate the Supremacy Clause and frustrate the "fresh start" objectives of the bankruptcy clause. *See id.* at 292–93. She sees the family court's

order modifying the property division to require James to provide her with a $50,000 QDRO, rather than a $100,000 QDRO, as a blatant attempt to recreate the $50,000 debt discharged by the bankruptcy court.

¶ 9.  The facts in *Spankowski* are straightforward. Susan and David Spankowski were divorced based on a stipulated MSA that provided David was to pay Susan one-half of his pension, the couple's only significant asset. *See id.* at 288. Several years after the divorce, David filed for bankruptcy and listed Susan as a creditor for the portion of his pension that he owed her. *See id.* David was granted a full discharge, including his debt to Susan. *See id.* Susan filed a postjudgment motion requesting the family court to modify the judgment. *See id.* at 289. The court granted her motion by modifying the judgment to give effect to the parties' intent that there was to be an equitable division of the property. *See id.* The family court reasoned "that justice required that the property division be changed because 'the bankruptcy resulted in total perversion of the intent of the parties and gave a "windfall" to [David]. Further, the result after bankruptcy is totally inequitable.' " *Id.*

¶ 10.  We reversed the family court. We balanced the state's interest in equitable property divisions with the objectives of the federal statutes. *See id.* at 293. Consequently, we held that under the Supremacy Clause the purpose of the bankruptcy code, to provide a "fresh start" to debtors, trumps the state's interest in equitable divorce settlements. *See id.* at 292–93. We concluded that the family court erred in reopening the entire property division to adjust for the windfall David received in the form of the discharge of his obligation to pay Susan one-half of his pension. *See id.*

¶ 11.  *Spankowski* does not provide support for Pamela's argument. *Spankowski* does prohibit a family court from recreating a debt discharged in bankruptcy by modifying a final property division to consider the discharge. However, that is not what the family court did here. First, rather than attempting to avoid the bankruptcy, the court dealt directly with the bankruptcy when it held that Pamela's discharge from responsibility for the loan operated to discharge James's responsibility for the QDRO. Second, in ordering James to provide a $50,000 QDRO, the court was not recreating the loan by reducing the QDRO; it was fashioning a remedy that would not leave Pamela without anything while giving James a windfall.

¶ 12.  The family court recognized that it could not revive the loan Pamela had discharged in bankruptcy. It recognized that the loan was not part of the property division. The court also recognized that Pamela's repayment of the loan was a precondition to James providing the QDRO, and because Pamela had not repaid the loan, a strict application of the MSA would excuse James from providing the QDRO.

¶ 13.  We agree with the family court that it could not recreate the loan discharged in bankruptcy. *See id.*, 172 Wis. 2d at 298. We also agree with the family court that a strict application of the MSA would relieve James of his obligation to provide a QDRO. The loan was not part of the property division in the MSA. The loan James made to Pamela was in anticipation of the MSA and was not considered in the portion of the MSA that distributed marital assets. Pamela fails to confront the language of Paragraph 4B of the MSA establishing a quid pro quo bargain. The MSA requires reciprocal actions by the parties—James was to provide a QDRO but only when Pamela repaid the loan.

Because the loan was discharged in bankruptcy, Pamela was under no obligation to repay the loan; consequently, James was under no obligation to provide the QDRO.

¶ 14. After holding that Pamela's discharge of the loan relieved James of his obligation to provide a QDRO, the family court invoked its equity powers to effectuate the final objectives of the agreed-upon property division. *See Washington*, 2000 WI 47 at ¶ 16. It concluded that if James did not provide a QDRO to Pamela, the property division would be disjointed; the parties' intent on the distribution of marital assets would be frustrated. In an attempt to do equity between the parties and to give meaning to the MSA, the family court ordered that James provide a $50,000 QDRO.

¶ 15. We conclude that the family court appropriately exercised its equitable powers to fashion a remedy to implement the intent of the parties. As a court of equity, the family court is able "to make a flexible and tailored response to the needs of a particular" couple. *Lutzke v. Lutzke*, 122 Wis. 2d 24, 36, 361 N.W.2d 640 (1985). The court has not reopened the divorce judgment; it has done nothing more than construe the judgment to clarify the parties' intention that Pamela was entitled to a portion of James's 401k plan. *See Washington*, 2000 WI 47 at ¶ 20 (problems may arise after the distribution of property that require the family court to interpret the divorce judgment in order to accomplish the goals of the judgment).

¶ 16. The family court did not ignore *Spankowski* and reinstitute James's loan that Pamela discharged in bankruptcy. The court gave full force and credit to the bankruptcy discharge. And to insure that Pamela did

get her equitable share of the r~arital estate as contemplated by the MSA, the court clarified James's obligation to provide a QDRO to Pamela.

¶ 17. During the hearing on James's motion to clarify the final judgment, Pamela sought interest on the QDRO because James had not provided the QDRO in more than three years since being ordered to do so. Pamela asserts that the family court failed to exercise its discretion in denying her request.

¶ 18. Pamela did not raise her request for interest in her motion for reconsideration. Thus, we are faced with a situation where Pamela failed to bring the error alleged on appeal to the attention of the family court. She never gave the court an opportunity to address the claimed error and to correct it if necessary. This procedure frustrates one of the fundamental principles underlying the waiver rule. *See Air Wis., Inc. v. North Cent. Airlines, Inc.*, 98 Wis. 2d 301, 311, 296 N.W.2d 749 (1980). Although waiver is a rule of judicial administration that does not absolutely prohibit us from reviewing an issue, the general rule is that matters not brought to the attention of the trial court will not be reviewed on appeal. *See Wirth v. Ehly*, 93 Wis. 2d 433, 444, 287 N.W.2d 140 (1980). On balance, we choose not to invoke waiver against Pamela because there is no question that the court did not misuse its discretion.

¶ 19. In response to Pamela's request for interest, the court explained that because she had not cooperated in 1997 when James offered to provide the QDRO required by the MSA, she was not entitled to interest. While interest may be required where there has been a delay in fulfilling obligations in a property

division, *see Corliss v. Corliss*, 107 Wis. 2d 338, 346, 320 N.W.2d 219 (Ct. App. 1982), a family court can deny interest if it offers a reasonable explanation. *See id.* at 347. The explanation of the court is reasonable; Pamela cannot expect to profit from her refusal to complete the transactions required in the final property division.

    *By the Court.*—Order affirmed.